# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

JAMES BRADY, as Chairman and WILLIAM
GRIMM, as Secretary of the Minnesota
Laborers Health and Welfare Fund and
Minnesota Laborers Pension Fund; JAMES
BRADY, as Chairman and KEITH KRAMER,
as Secretary of the Minnesota Laborers
Vacation Fund; FRED CHASE, as Chairman
and JEFF SEIPEL, as Secretary of the
Construction Laborers' Education, Training
and Apprenticeship Fund of Minnesota and
North Dakota; SCOTT WEICHT, as Chairman
and JAMES HEGGE, as Secretary of the
Minnesota Laborers Employers Cooperation
and Education Trust; and each of their Successors,

        Plaintiffs,


v.                                        **MEMORANDUM OPINION**
                                          **& ORDER**
                              Civil File No. 03-4104 (MJD/JGL)


MINNESOTA VALLEY LANDSCAPE, INC.,
MV LABOR, INC., DAVID LINDSTROM,
individually, and ALLYN LINDSTROM, individually,

        Defendants.

_____

Pamela Hodges Nissen, McGrann Shea Anderson Carnival Straughn & Lamb,
Chartered, counsel for Plaintiffs.

Frederick E. Finch, Bassford Remele, P.A., counsel for Defendants.

_____

## I.      INTRODUCTION

This matter, which involves claims by the Plaintiffs for delinquent fringe

benefit contributions, penalties, and attorneys fees, is before the Court on

Plaintiffs' Motion for Summary Judgment on both liability and damages [Docket

No. 34]; and Plaintiffs' Motion to Strike certain evidence from the record [Docket

No. 47].  The Court heard oral argument on these Motions on May 2, 2005.

## II.     FACTUAL BACKGROUND

For purposes of the Summary Judgment Motion, the Court views the facts

in a light most favorable to the non-moving party, the Defendant corporations and

individuals. However, the Court notes that the Defendants have not challenged

most of the factual summary that is part of the record.  Thus, the following facts

are taken as undisputed unless noted as controverted.  Fed. R. Civ. P. 56 (e)

(response must set forth specific facts showing genuine issue for trial).

A.      Relationship between the Defendants & Agreements With the
        Plaintiff Councils.

Defendant Minnesota Valley Landscape is a commercial landscaping

contractor that bids on landscape projects, and where awarded those contracts,

installs landscaping on commercial and government properties and roadways.

The corporate defendants, Minnesota Valley Landscape and MV Labor, are owned

by the Lindstrom family (which includes Defendants David and Allyn Lindstrom).

MV Labor, a wholly owned subsidiary of Minnesota Valley Landscape, was established to issue payroll for the related Minnesota Valley Landscape companies.

Minnesota Valley Landscape executed and entered into two agreements covering the relevant time period in this case, 2000-2003.  The first agreement was an acceptance of the Collective Bargaining Agreement with the Plaintiff Contractors and Councils and their respective affiliated unions, covering the time period from 1999 through April 30, 2001.  When that agreement expired, a second Agreement was signed covering the time period from May 1, 2001 through April 30, 2003.

Both agreements, which apply to "onsite landscape work and related work," required Minnesota Valley Landscape to make fringe benefit contributions to the unions based on the hours worked by certain employees.  The parties agree that "landscape work" generally excludes residential work but is otherwise defined to include, in the 1999-2001 Agreement, "seeding, sodding and the planting of all evergreen and deciduous shrubs and trees."   In the 2001-2003 agreement, "landscape work" was defined as the "seeding, sodding and planting" of woody, herbaceous, and other plant materials; installation of edging and groundcover; and installation of erosion control materials, "limited to erosion blanket, silt fence and bail checks."

B.   Minnesota Valley Landscape's Contributions to the Funds.

The Agreements required fringe benefit contributions for "each hour worked by all Employees covered by this Agreement."   Employees working on landscape projects for the Lindstrom companies completed daily time cards that were turned into MV Labor weekly.   The time cards allowed the employee to indicate for which Lindstrom entity the work was performed, e.g., "MVGC" [Minnesota Valley Garden Center], "MVL" [Minnesota Valley Landscape], or "MVW" [Minnesota Valley Wholesale].   Employees entered the actual start and stop time on a daily basis and from that calculated the actual number of hours worked.   Employees also entered an internal number that would identify the contracted-for job on which the work was completed, e.g., Project No. 9889 was for DOT Project 72, the Mitchell Road project.   Defendants concede (because they do not challenge) Plaintiffs' assertion that all employees were paid by Defendant MV Labor, even though the work may have been done for a different Lindstrom family entity, e.g., Minnesota Valley Landscape.   However, hours and contributions to the Plaintiffs' Funds were reported and paid by Minnesota Valley Landscape.

Plaintiffs contend that for several employees, time and fringe benefit contributions were not reported or made.   In addition, Plaintiffs contend that some employees were underpaid.   Plaintiffs use a comparison among the

4

completed time cards documenting daily hours worked; MV Labor's actual payroll records documenting hours and wage amounts paid for the time period corresponding to the submitted time cards; and in some cases, the Statement of Compliance completed by a Minnesota Valley Landscape representative and submitted to the Minnesota Department of Transportation, corresponding to the same time period as the submitted time cards.

As an example, employee J.N.G. worked 72 hours during the week of May 4, 2002 on Project No. 9889.  He was paid by MV Labor for 40 hours at $10.50 per hour with no overtime credit shown, even though some employees were allowed to "bank" overtime hours.[1]  In the Minnesota DOT Statement of Compliance, Minnesota Valley Landscape reduced the actual hours worked even further, by more than 50%, reporting that this employee worked only 20 hours on the project, 5 of which were paid at the hourly rate of $27, and 15 of which were paid at the hourly rate of $18.50.  Plaintiffs contend, and Defendants do not dispute, that none of this employee's hours (72, 40, or 20) were reported to the Funds, nor were contributions made based on the actual, paid, or reported time worked.

C.     Calculation of Delinquent Contributions Owed.

Both Agreements required Minnesota Valley Landscape to supply

---

[1]     An undated MV Labor internal memo on time card and payroll procedures states: "figure out all hours.  Pay up to 40 hours – no overtime except for [certain individuals]."

employment and payroll records sufficient to allow the Funds to determine

compliance with the Agreements.

Before this action started, the Lindstrom companies and some members of

the Lindstrom family became the subject of a federal investigation for possible

criminal violations related to the manner in which the payroll system operated.

After this case was filed, search warrants were executed at Minnesota Valley

Landscape, and all business and financial records seized.  After securing a release

to allow Plaintiffs access to those records, Plaintiffs' auditor compiled a listing of

the work reported and contributions made to Plaintiffs by Defendant Minnesota

Valley Landscape for the years 2000 through 2003.  The auditor then prepared a

listing of actual work completed by employees and not reported to Plaintiffs in

those same years.  After calculating actual contributions owed, then adding in

penalties and interest, the auditor arrived at a total sum owed of 650,682.54

(before attorneys fees).

Relying on the auditor's calculations, Plaintiffs seek summary judgment on

damages.  Defendants do not identify an alternative figure, even though they

concede that some under-reporting occurred by not challenging the facts

regarding, for example, employee J.N.G.; rather, Defendants contend that obvious

errors exist in the auditor's calculations, including at least the following:  (1)

contractually excluded work is included in the auditor's calculations; and (2) the

incorrect rates were used to calculate contributions.

The Defendants supported these factual challenges, in part, with the Affidavit of Gladys Lindstrom and attached exhibits.  Plaintiffs moved to strike this evidence, arguing that they were not allowed to depose Mrs. Lindstrom and some other pertinent witnesses.  For example, Defendant David Lindstrom and his wife Gladys were not deposed after they advised Plaintiffs' counsel that they intended to invoke the Fifth Amendment privilege if deposed.  Plaintiffs thereafter did not go forward with the depositions.

## III.    DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper when the moving party demonstrates that an absence of material disputed facts warrants judgment in the movant's favor.  Fed. R. Civ. P. 56(c); *Carpenters & Joiners Welfare Fund, et. al. v. Wayne,* No. 02-779, 2003 U.S. Dist. LEXIS 12921 at *3 (D. Minn., July 21, 2003); *Trustees of the Minnesota State Basic Bldg. Trades, etc.  v. Gibson Constr. Enter., Inc.*, Civ. No. 01-2170, 2003 U.S. Dist. Lexis 7801 (D. Minn., May 6, 2003).  When considering this Motion, the Court must take the facts in a light most favorable to the non-movant. *Trustees of the Minnesota State Basic Bldg. Trades, etc.*, Civ. No. 01-2170, 2003 U.S. Dist. Lexis 7801.

Plaintiffs moved first for summary judgment on the liability of MV Labor, which did not sign onto the Agreements, for the contractual obligations of Defendant Minnesota Valley Landscape.  Defendants do not dispute or challenge Plaintiffs' argument that MV Labor, which paid the employees but was not a signatory to the Agreements, is bound by the obligations of those Agreements. Thus, the Court will grant that portion of Plaintiff's Motion.

The issues remaining before the Court are (1) whether there are factual disputes regarding Plaintiffs' efforts to pierce the corporate veil and hold the individual defendants liable for delinquent fringe benefit contributions; (2) which party, the Funds or the employer, has the burden of proof on damages; and (3) are there factual disputes on the calculation of damages that preclude summary judgment?  The Court will also address the Motion to Strike the Lindstrom Affidavit.

## B.  Piercing the Corporate Veil.

The Plaintiffs allege that the individual defendants, David Lindstrom and Allyn Lindstrom, failed to observe corporate formalities and operated the Lindstrom family businesses in a fraudulent manner.  Thus, according to the Plaintiffs, the Court should find as a matter of law that these individual defendants are personally liable for the delinquent fringe benefit contributions and other sums, by piercing the corporate veil.

The Eighth Circuit has held that officers of a corporation cannot be held personally liable for delinquent fringe benefit contributions absent grounds for piercing the corporate veil, a determination that is made under state law. *Rockney v. Blohorn*, 877 F.2d 637 (8th Cir. 1989). *See also Pipe Fitters Health & Welfare Trust v. Waldo, R., Inc.*, 969 F.2d 718, 721 (8th Cir. 1992) (noting that *Rockney* remains controlling law), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 981 (1993). The Eighth Circuit also holds that an officer may be personally liable for fringe benefit contributions if the officer contractually agrees to that liability, again, a determination that is made based on state law. *Rockney*, 877 F.2d at 643. Plaintiffs have pointed to nothing in the agreements that contractually bound the Lindstroms personally for Minnesota Valley Landscape's contributions. Thus, there is no basis in the record on which summary judgment could be based on personal contractual liability. *See id.* (no evidence that individual accepted personal liability for corporate contractual obligations).

However, Plaintiffs argue that the undisputed facts warrant the Court finding, as a matter of law, that the corporate veil should be pierced. Minnesota uses a two-part test for determining whether to pierce the corporate veil. *See Victoria Elevator Co. v. Meridian Grain Co.*, 283 N.W.2d 509 (Minn. 1979). The first part of the test considers several factors:

> insufficient capitalization for purposes of corporate undertaking,
> failure to observe corporate formalities, nonpayment of dividends,

9

> insolvency of debtor corporation at the time of the transaction in question, siphoning of funds by a dominant shareholder, non-functioning of other officers and directors, absence of corporate records, and the use of the corporation as merely facade for individual dealings.

*Id.* at 512.  If a number of these factors are met, the Court then considers the next prong.  *Almac, Inc. v. JRH Development, Inc.*, 391 N.W.2d 919, 921 (Minn. App. 1986).  The second part of the test considers whether there is "an element of injustice or fundamental unfairness.  Where the above factors are present, to allow an individual to escape liability because he does his business under a corporate form is to allow him an advantage he does not deserve."  *Victoria Elevator,* 283 N.W.2d at 512.

Plaintiffs argue that the Lindstroms failed to observe corporate formalities, intermingled company assets, failed to distribute dividends, and misrepresented the hours worked by and payments made to employees. Defendants dispute most of these contentions.

For example, while Plaintiffs contend that no corporate records were maintained, the available evidence supports the inference that Defendants advance, namely, that corporate records were maintained but are simply now with federal authorities.  Similarly, Plaintiffs contend that company assets were intermingled for fraudulent purposes or to fund individual pursuits.  Again, taking the available evidence in Defendants' favor, summary judgment cannot be

10

granted.  Exhibit J, the bank reconciliation statement for Minnesota Valley

Landscape's checking account, shows only that payments were made out of this

account to other Lindstrom family companies, including MV Labor.  This fact

alone cannot support, as an undisputed matter, that company assets were

intermingled improperly; that the intermingling was done for fraudulent

purposes; or, that the transfer of assets was done without following corporate

formalities.

Similarly, the comment in the Combined Financial Statement (Ex. K) that

"management does not have sufficient records to support the propriety" of

transactions between the Lindstrom family companies, does not rise to the level of

undisputed facts that warrants piercing the corporate veil.  Alternatively, a

reasonable fact finder could conclude that this one statement is not enough

evidence that some corporate formalities were not followed.  *See Snyder Elec. Co.*

*v. Fleming*, 305 N.W.2d 863, 868 (Minn. 1981) (noting that evidence some

corporate formalities not followed was not enough to pierce the corporate veil).

Finally, Plaintiffs point to "the importance of the lack of distribution of dividends"

in arguing that the undisputed facts satisfy the *Victoria Elevator* first prong.

However, the decision Plaintiffs cite, *Almac, Inc.*, concluded that the absence of

dividend distribution was not enough to pierce the corporate veil.  391 N.W.2d at

923; *see also Snyder Electric Co.*, 305 N.W.2d at 868 (same).

Certainly there is some evidence of payroll operations that do not appear to have comported with standard business practices, simply from a review of the undisputed facts regarding the time records and payroll payments for the two employees used as examples in Plaintiffs' Motion.  And, the corporate defendants were warned, by an accountant, that the practice of banking hours could expose the companies to criminal and civil penalties, and could expose the officers to individual liability.  (Ex. E).[2]  Finally, the defendants do not dispute these facts. But these facts are relevant more to the second prong of the *Victoria Elevator* two-part test (whether there is evidence of injustice), rather than to the first prong. When considering only the first prong, the Court finds that the Plaintiffs have not met their burden under Fed. R. Civ. P. 56, and that, taking the facts and reasonable inferences in Defendants' favor, a fact finder could conclude that the corporate veil should not be pierced.

### C.     Summary Judgment on the Delinquent Contributions

Plaintiffs also ask the Court to enter summary judgment on damages, in an

---

[2]     "Banking" hours was a practice the corporate defendants allowed some employees to use, in order to save and then draw down overtime hours at a time in the year when landscaping work was slow.  Not all employees had the option of banking hours.  In 2003, the Defendant companies' accountant advised company officers that the "banking" practice did not comply with Department of Labor and IRS guidelines because neither taxes nor FICA contributions were withheld from these extra hours, nor were employees paid an overtime rate.  The Defendants' response to this warning is not apparent from the record since the employee time cards in the record pre-date this warning.

amount in excess of $600,000 before fees.

This request raises two issues: first, which party, the Plaintiff Funds, or the Defendant Employers bears the burden of proof in showing the accuracy or inaccuracy of the auditor's calculated delinquencies.  Second, is the record before the Court sufficient to allow summary judgment to be entered on the auditor's calculations in the amount requested by Plaintiffs.

    1.  The Burden of Proof.

Plaintiffs argue for a burden-shifting approach in establishing liability for delinquent contributions:  once the Funds have established that an employee performed some covered work, "the burden shifts to the employer to produce records that would verify the amount of hours spent by that employee performing non-covered work."  This was the approach applied in *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988) and adopted by the Eighth Circuit in *Stanton v. Larry Fowler Trucking, Inc.*, 52 F.3d 723, 727 (8th Cir. 1995).

Defendants argue that, contrary to *Larry Fowler Trucking*, which was a case involving an ERISA/COBRA claim related to continued health insurance coverage, the Eighth Circuit considered but rejected the Ninth Circuit's burden shifting test in an ERISA-delinquent contributions case.  *See Carpenters Fringe Benefit Funds of Illinois v. McKenzie Engineering*, 217 F.3d 578 (8th Cir. 2000).  In *McKenzie*

13

*Engineering*, the Funds supported their claim for delinquent contributions and penalties with an auditor's report. *Id.* at 582-83. When the Defendants pointed out a number of errors in the auditor's report, the Plaintiffs defended the report by arguing (after losing other arguments) that the burden of proof shifted to the employer once the Fund produced sufficient evidence questioning the accuracy of the employer's records. *Id.* at 585. The Eighth Circuit rejected this argument, first because there was no issue as to the accuracy of the employer's records, and second because the employer had sufficiently challenged the auditor's assumptions. Thus, the Court held that the Funds failed to meet their burden of proof to establish the claim for delinquent contributions. *Id.*

Plaintiffs distinguish *McKenzie* because "Defendants have not brought forth any credible evidence" to disprove the auditor's calculations. In addition, Plaintiffs argue that there was no issue in *McKenzie* with the accuracy of the employer's records. In contrast here, the auditor received only time cards and a listing of job numbers. And, the person responsible for payroll was not deposed after invoking the 5th Amendment privilege. Plaintiffs therefore argue that the *McKenzie* test is inapplicable, citing *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692 (6th Cir. 1994).

The procedural posture of these decisions can be relevant. The *McKenzie* appeal involved delinquent ERISA contributions, but followed a bench trial. 217

14

F.3d at 580.  The *Larry Fowler Trucking* appeal, also brought after a bench trial,

was a claim based on COBRA/ERISA health care continuation benefits, with the

employer bearing the burden of proof on whether the required COBRA notice had

been given.  52 F.3d at 726-28.  The *Grimaldi* decision – which involved

delinquent ERISA contributions – was apparently an appeal from a bench trial,

rather than a summary judgment ruling.  *See* 30 F.3d at 692-93.[3]  This procedural

distinction was critical to courts in the Seventh and Second Circuits, which

refused to apply the *Grimaldi-Brick Masons* burden shifting approach for summary

judgment motions on damages in an ERISA delinquent contributions case.  *See*

*Illinois Conf. Of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking,* 71

F.3d 1361, 1366-67 (7th Cir. 1995) (distinguishing *Brick Masons* and *Combs*

because they did not involve motions for summary judgment on damages);

*Demolition Workers Union v. Mackroyce Contracting Corp.*, 2000 WL 297244 at *7-8

(S.D.N.Y., Mar. 22, 2000) ("This Court, however, will not employ the burden-

shifting analysis . . . at the summary judgment stage. . . . the proper question on

summary judgment is whether Mackroyce has submitted evidence that raises a

factual dispute as to the amount of damages owing"); *Central Pension Fund of the*

*Int'l Union of Operating Engineers v. Murphy's Tire, Inc.*, 1998 WL 865594 at * 7-8

---

[3]        The Eighth Circuit relied on the Sixth Circuit's *Grimaldi* decision, as well
as the *Brick Masons* decision, in applying the burden-shifting approach in *Larry Fowler
Trucking*.  *See* 52 F.3d at 727 (citing *Grimaldi*).

(N.D.N.Y., Dec. 9, 1998) (while burden-shifting approach may further ERISA policies, summary judgment standards require only a determination of whether factual disputes exist as to the amount of damages).

The burden-shifting approach adopted by the Eighth Circuit in *Stanton v. Larry Fowler Trucking, Inc.* advances and preserves the policy objectives of ERISA. To hold otherwise, as the *Larry Fowler* court noted, would "place the [Funds] in the untenable position of proving a negative and would reward shoddy record-keeping practices by the . . . employer." 52 F.3d at 728. However, in the summary judgment context, particularly in the context of a Motion seeking an award of more than $600,000, the Court must judge first whether the Funds have met their burden to show, under Rule 56 standards, that the employees whose hours are tallied in the Auditor's reports performed covered work.

## 2.  The Auditor's Calculations.

In opposition to Plaintiffs' Motion, the Defendants raise several challenges to the Auditor's calculations, concluding that the Funds have not met their burden and material factual disputes exist.  Defendants' challenges rely almost entirely on the evidence submitted with the Affidavit of Gladys Lindstrom.  In reply, Plaintiff asks the Court to disregard the Gladys Lindstrom Affidavit and its evidence because it was offered only after Mrs. Lindstrom invoked her 5th Amendment privilege against self-incrimination, thereby preventing her deposition.  Plaintiffs

16

contend that Defendants must therefore "bear the consequence of the lack of evidence."

Thus, the Court turns first to Plaintiffs' Motion to Strike the Lindstrom Affidavit. The decision on which Plaintiffs rely for their Motion, *SEC v. Global Telecom Serv.*, explains that the consequence of invoking the privilege in the civil context may be entry of summary judgment, though only if the moving party meets its burden of proof. 325 F. Supp.2d 94, 109 (D. Conn. 2004) ("while an adverse inference may arise from such silence, Plaintiff must still meet its burden of proof and Defendants' silence, alone, does not automatically give rise to their liability.").

The Court first considers whether the Defendants have forfeited the right to offer evidence in opposition to the summary judgment motion. In doing so, the Court has found instructive a decision in a similar case, *Bourgal v. Robco Contracting Enterprises, Ltd.*, a case involving delinquent ERISA contributions and a motion for summary judgment. 969 F. Supp. 854 (E.D.N.Y. 1997). Although the district court in *Bourgal* refused to allow the defendant to introduce evidence after invoking the 5th Amendment privilege, the discovery record was far more egregious than in this case. There, the defendant agreed to produce documents and then violated that agreement, agreed to be deposed and then failed to appear, invoked the privilege after finally appearing, obtained the right to

17

withdraw the invocation, and then again failed to appear for a deposition. *Id.* at

858-860. Based on this record, and the Court's observation that it had been "more

than lenient with the defendants," it refused to consider affidavits submitted in

opposition to the summary judgment motion. *Id.* at 861-62.

The troublesome discovery record of *Bourgal* is not present here. As

explained in her Affidavit, the documents on which Mrs. Lindstrom relies were

provided to the Plaintiffs in discovery. The Interrogatory Answers attached to the

Affidavit were sworn to and signed by the individual Defendants. More

importantly, the record does not establish that Mrs. Lindstrom's pre-deposition

notice that she would invoke the privilege with respect to some subject matters

prejudiced or interfered with Plaintiffs' discovery efforts, because she left open the

possibility of a deposition. Mrs. Lindstrom's civil counsel acknowledged the

possibility that the deposition could go forward when requesting that he be given

advance notice of scheduling, since the Lindstroms' criminal attorney "will want

to be present to assist their clients."

The critical distinction between the decisions on which Plaintiffs rely and

this case is that Mrs. Lindstrom never actually asserted the 5th Amendment

privilege in response to a specific question. This distinction is critical because the

Court can be called upon, when the privilege is asserted, to determine the

propriety of the privilege on a question-by-question basis. *General Dynamics Corp.*

*v. Selb Mfg., Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (privilege must be asserted in response to specific questions so court can determine propriety in each instance), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926 (1974).  Absent this sort of record – a specific question followed by the assertion, if determined necessary, of the privilege – the Court does not have an adequate basis on which to judge whether Mrs. Lindstrom's intended assertion of the 5th Amendment prejudiced plaintiffs' discovery efforts.  *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (noting that court has discretion in determining consequence of invoking privilege based in part on prejudice opponent faced as a result of invocation).

Plaintiffs claim that a deposition would have exposed Mrs. Lindstrom's lack of foundation for the evidence she now offers.  Defendants, in response, suggest that Mrs. Lindstrom may have answered those questions because the notice of the intended invocation of the privilege was limited to certain specific subject matter areas and Defendants did not prevent a deposition notwithstanding the intended invocation of the privilege.  Based on the above reasoning, the Court concludes the Defendants have the better argument here.  The privilege was never actually asserted because Plaintiffs chose not to go forward with any deposition, even one that might be substantially limited by an actual invocation of the privilege.  Thus, the Court denies the Motion to Strike.

Having denied the Motion, the Court turns to the auditor's calculations for

delinquent contributions.  Based on the Court's review of that evidence, it finds

that Plaintiffs have not met their burden of showing, as a matter of undisputed

facts, that the employees whose hours are tallied in the Auditor's report

performed covered work, and therefore, under *Larry Stanton Trucking* and

*McKenzie*, the burden of proof does not shift to the Defendants to produce

evidence of non-covered work.

First, nothing in the Auditor's report or the Skoog Affidavit explains how

"covered work" was identified.  It is undisputed that only "landscape and related

work" is covered work.  The Skoog Affidavit attests that the auditor used time

cards and a job list (which assigned internal numbers to each job) to identify

"individuals and the hours they worked performing laborers landscape work at the

various landscape projects."  Skoog Aff., ¶11.  But simply tallying the numbers

recorded in these documents does not distinguish between covered and non-

covered work, as these documents do not identify whether the employee was

"performing laborers landscape work."

Second, taking reasonable inferences in Defendants' favor, it appears the

Auditor ignored available evidence that may have assisted in this determination.

Plaintiffs state that the auditor used these documents in the "absence of any

contrary evidence from the Defendants."  *Id.*  However, Defendants point to other

evidence disclosed in discovery that the Auditor did not consider.  For example,

the Auditor included hours for employees who were identified in discovery – e.g.,

in deposition testimony and produced documents – as supervisors and irrigation

workers, job categories plainly excluded under the Agreement for fringe benefit

contributions.  Plaintiffs challenge the reliability and accuracy of at least one of

these documents, Exhibit 2 to the Lindstrom Affidavit, because it was generated

after the government seized the Defendants' business records.  However, this

Exhibit is consistent with the deposition testimony that Plaintiffs submitted in

support of their Motion in that at least one of the individuals listed as a supervisor

on Exhibit 2 was also identified in deposition testimony as a supervisor.  Nothing

in the record indicates why the auditor chose to include the supervisor and

irrigation workers' in the audit report as covered work.[4]  The Court cannot

conclude that it is undisputed that Plaintiffs have met their burden to show that

the employees listed in the Auditor's report performed covered work.

Third, defendants argue that hours for residential work and other non-

covered employee work was improperly included.  Again, the deposition

testimony suggests that the Defendants viewed irrigation work as excluded, or

non-covered work.  Nothing in the record explains why the work of irrigation

---

[4]     No sworn testimony from the auditor has been submitted.  Rather,
Plaintiffs attached the auditor's report to the Affidavit of the Fund Coordinator.
However, this witness does not attest that he is familiar with or knowledgeable about
decisions the auditor made to include or exclude certain employees or hours worked in
making the covered work determination.

personnel was included in the auditor's calculations given the controlling

definition of "landscape and related work." Defendants also point to errors in

including residential work, even though the Agreements exclude that category,

and in calculating, in one case, the total number of hours of alleged covered work

for a given month. In another case, the auditor included the hours for a "truck

driver" employee, even though other truck driver-employees' hours were

apparently excluded.

Fourth, even if the Court could disregard these errors by assuming that the

remaining employees performed covered work, which it cannot, Defendants

contend that penalty rates were improperly used to calculate contributions.[5] The

Fund Administrator stated, in his first Affidavit, that "all individuals are billed at

the higher [Laborer II] rate" when an employer violates the classification

limitations between Laborer I and Laborer II, relying on Article 3 to the first

Agreement. However, that article does not contain that penalty. In his Second

Affidavit, the Fund Administrator explained that, in his experience, the Funds

"interpret[]" the Agreements to include this penalty. Supp'l Skoog Aff., ¶6.

Nothing in the first Agreement supports this interpretation, even if the Court was

---

[5] Defendants also contend that undisclosed rates were used, since each Agreement used "TBA" to designate future rates after the first year. Plaintiffs submitted the updated rates adopted by the Councils. (Skoog Supp'l Aff., Ex. I). Thus, there are no material factual disputes with respect the appropriate rates after the first year.

inclined to consider what appears to be inadmissible evidence.  The only penalty imposed by the first Agreement for violations is "two times the standard straight time and overtime rate."  Art. 12.1, Skoog Aff., Ex. C.

The standard time for vacation benefits for a Laborer I under this Agreement was .51.  *Id.* at p. 3.  Thus, two times that rate would be $1.02.  Nothing in the auditor's report distinguishes between Laborer I and Laborer II, since the auditor assumed that all employees would be at the higher rate.  Thus, there is no way to re-calculate the contributions, even assuming the other errors could be ignored.

Last, the Defendants argue that the auditor improperly used the rates for the second, later agreement, before that Agreement was effective.  However, as Plaintiffs point out, the second Agreement included a fairly typical "evergreen" provision that bound the employer to the Agreement, year to year, unless the employer took affirmative action to terminate the Agreement.

Finally, assuming the Court granted summary judgment in their favor, Plaintiffs seek an Order recognizing that they are entitled to an award of fees and costs.  While these remedies may be available to the successful plaintiff, *see Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988), the material factual disputes that preclude summary judgment on damages make a ruling on this issue at this time unnecessary.

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) Plaintiffs' Motion for Summary Judgment [Docket No. 34] is GRANTED IN PART with respect to the liability of Defendant MV Labor for the contractual obligations of Defendant Minnesota Valley Landscape, and DENIED IN PART with respect to Plaintiffs' request to pierce the corporate veil and the claim for damages.

(2) Plaintiffs' Motion to Strike [Docket No. 47] is DENIED.


Dated:  May31, 2005

s/ Michael J. Davis
Michael J. Davis
United States District Court